LAWSON-ERB LUMBER CO. *v.* GRAHAM-PAIGE CO.
OF MICHIGAN.

1. Witnesses—Matters Equally Within Knowledge of Deceased
Corporate Officer—Surviving Officers—Landlord and Tenant
—Oral Agreement Reducing Rent.

In action of assumpsit to recover balance of rent, alleged to be
due under written lease for five-year term, which after 20-½
months had been deferred in part by a supplemental written
agreement reducing amount presently payable for ensuing six
months, testimony by officers of corporate lessee that con-
tinuance of smaller payments beyond such six-month term
and acceptance by lessor was in payment of rent in full and
was pursuant to oral agreement with an officer of corporate
lessor, since deceased, *held*, not barred by statute as to matters
equally within knowledge of deceased officer, where testimony
also shows a surviving officer of lessor was fully familiar with
the arrangement (3 Comp. Laws 1929, § 14219).

2. Landlord and Tenant—Reduction of Rent—Executed Oral
Agreement.

In action of assumpsit to collect balance of rent alleged to be
due under lease for five-year term, evidence *held*, to show that
corporate lessor entered into oral agreement reducing rent for
an unexpired portion of term, which oral modification, having
been completely executed, was binding on lessor although for
a period of years (3 Comp. Laws 1929, § 13411).

3. Frauds, Statute of—Modification of Written Lease by Oral
Agreement.

An oral agreement between landlord and tenant reducing the
rent payable by the terms of a written lease, while invalid
and void so long as it remains executory, is valid and binding
when followed by the regular payment and acceptance of the
reduced amount in full (3 Comp. Laws 1929, § 13411).

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted January 12, 1938. (Docket No. 14, Calendar No. 39,748.) Decided February 24, 1938.

Assumpsit by Lawson-Erb Lumber Company, a Michigan corporation, against Graham-Paige Company of Michigan, a Michigan corporation, for sums due on a lease. Judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*Racc, Haass & Allen,* for plaintiff.

*Crawford S. Reilley* (*Hill, Hamblen, Essery & Lewis,* of counsel), for defendant.

NORTH, J. Plaintiff sues to recover the unpaid balance of rent alleged to be due on a five-year written lease entered into with defendant. From a judgment for plaintiff defendant appeals.

Plaintiff as lessor and defendant as lessee entered into a written lease of premises in the city of Birmingham, Michigan. Under the terms of this lease the lessor was to erect a building according to plans and specifications agreed upon, and to lease the building and premises to the lessee for a five-year period beginning February 15, 1929. The rent specified was $350 monthly for the first two years, $400 a month for the third year, and $450 per month for the fourth and fifth years. In the fall of 1930 negotiations were had for the temporary reduction of the rent, resulting in another written contract which provided for rental payments of $250 per month for a period of six months beginning November 1, 1930. This written contract further provided that the reduced payments amounting to $725 for this six-month period should be added to subsequently accruing monthly rentals. When this reduced rental

period had ended the lessee continued to tender and the lessor accepted and cashed monthly checks for $250 for the balance of the leasehold term, except that a check of $125 for the last half month's rent was retained by plaintiff but not cashed. Tendered return of this check at the trial was refused. Plaintiff's suit is for $7,075, this being the difference between the total rentals provided for in the lease and the amount paid by defendant.

There is no dispute between the parties over the terms of the written lease and the subsequent contract in writing modifying the same. The controversy centers in an alleged oral agreement for reduction of monthly rentals made subsequent to April 30, 1931 (the day when the written agreement for reduced rentals expired). A letter was produced at the trial written by the Graham-Paige Company to plaintiff on April 28, 1931, reading in part as follows:

"Last fall we made arrangements whereby part of the payments were deferred until 1932 with the expectation that conditions would improve in spring.

"We have operated in Birmingham at a loss ever since we started and it would not be good business for us to continue on the same rental basis. If we cannot secure a reduction in the rent it would be better that we sublet the entire building. We realize that we could not hope to get the amount as stipulated in the lease and do not care to establish a rental value that would be detrimental to you after the expiration of our present lease."

In answer to this letter the Lawson-Erb Lumber Company wrote defendant company a letter in which they acknowledged that conditions were bad; that they also were suffering under adverse conditions and had taken on the obligations necessary to build

on the leased land by direct request of defendant company; and that they would be pleased to help defendant company if it did not mean a hardship to plaintiff.

Defendant produced oral evidence showing that it continued negotiations for reduction of rent with John Lawson, who until his death on August 15, 1932, was actively in charge of the business of the Lawson-Erb Lumber Company. James M. O'Dea, who was president and general manager of Graham-Paige Company, testified:

"*Q.* Previous to May 1, 1931, did you have any negotiations with Mr. Lawson in reference to the continuation of the payment of $250 per month until the termination of the lease?

"*A.* Towards the end of April business instead of * * * being better, which we expected, was worse, so at that time Mr. Thoms had made the survey what they were paying in their show rooms in Birmingham and he and I went out and saw Mr. Lawson and told him very definitely we could not afford to pay $250 a month, if we had to pay $250 a month we would have to move out because the going rent at that time for similar show rooms was $75 to $100 a month. * * * After a great deal of discussion we compromised, we were to pay $250 a month for that show room and the service up until the expiration of the lease or at least until business got better but, of course, business hasn't got better."

There is testimony showing a subsequent effort in July, 1931, to have the monthly rental reduced below $250. Lansing W. Thoms, vice-president and sales manager of defendant company during the period of this lease, testified:

"I met Mr. Lawson at the show room in Birmingham and we went over several incidental matters

about the little things about the building and then I brought up the question of rent. As I remember the conversation, I says, 'Mr. Lawson, we cannot go on paying $250 a month, $250 a month is too much rent for this building. I don't know whether you know it or not, but there is a similar type of building which is leased anywhere from $50, $75 to $100 a month at the present time.' * * * I says, 'Mr. Lawson, why don't you make a further reduction of this rent?' And he replied, 'Well, I know that you are taking a loss on the rent and I also want you to know we are taking a loss on the rent also, it would be impossible to lower the rent below $250 a month.' I says, 'Well, we cannot continue on paying $250 at all times.' He says, 'Well, if you get really pushed where you cannot pay any more come around and see me again but I know you can pay $250, and regardless of whether the other buildings are paying less than that right now.' He says, 'If you really get into bad trouble on this rent come around and see me,' and the conversation was ended there.''

Plaintiff objected to the foregoing testimony of O'Dea and Thoms as being inadmissible under 3 Comp. Laws 1929, § 14219:

''And when any suit or proceeding is prosecuted or defended by any corporation, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all in relation to matters which, if true, must have been equally within the knowledge of a deceased officer or agent of the corporation, and not within the knowledge of any surviving officer or agent of the corporation.''

Mr. Erb testified:

''I had no knowledge of any agreement other than the written amendment to the original agreement.''

Notwithstanding this testimony on the part of Mr. Erb we are not in accord with the trial judge

who seems to have been of the opinion that the above-quoted testimony in behalf of defendant, being equally within the knowledge of Mr. Lawson, a deceased officer of plaintiff company, was barred by the statute. In his opinion the trial judge said:

"It is unfortunate that the court is deprived of the testimony of Mr. Lawson. However, I am satisfied from the proofs that no other officer (of plaintiff company) had the knowledge of the matters pertaining to this particular transaction that he possessed."

Under the circumstances set forth in this record we are unable to reach any other conclusion than that Mr. Erb, president of plaintiff company, was fully advised of the now controverted oral agreement. From April 30, 1931, the expiration date of the written agreement for the temporary reduction of rent, to the end of the leasehold term, plaintiff company received from its lessee each month (with the exception of the last payment of $125) a check in the amount of $250 bearing a notation plainly indicating that the check was in payment of the rent for the current month. There were 17 such payments made to plaintiff company after the death of Mr. Lawson during which time Mr. Erb was in charge of plaintiff's business. The following testimony of Mr. Erb is quite indicative of his knowledge of this whole transaction. He testified:

"*Q.* Now, then, did you know that after the 30th of April, 1931, that the lessee Graham-Paige paid $250 each and every month up to the time of the termination of this lease?

"*A.* I was aware of the rentals that were paid, the majority of the time. I did eventually know a long time before the termination of the lease that the lessee was paying $250 per month. I know of

the letter written by Graham-Paige under date of April 28, 1931.  * * *

"*Q*. From May 1, 1931, up to the last payment you knew each and every month it would be $250 for the rent, did you know that?

"*A*. I believe that.

"*Q*. But you never made any protest to the Graham-Paige?

"*A*. No, I did not.

"*Q*. Because of those payments or any, took any action whatsoever?

"*A*. Not until the final payment.

"*Q*. Not until the final payment?

"*A*. Until the termination of the lease."

Quite in accord with the foregoing testimony of Mr. Erb is that of Mr. O'Dea to the effect that in a conversation which he had with Mr. Erb he called the latter's attention to the oral agreement which had been made with Mr. Lawson relative to the reduction of rent and Mr. Erb said, "I am fully familiar with the arrangement you had."

In view of the foregoing record it must be held that the statute (3 Comp. Laws 1929, § 14219) did not bar the oral testimony of O'Dea and Thoms, because it cannot be said the subject matter of such testimony was "not within the knowledge of any surviving officer or agent of the (plaintiff) corporation." Instead, we think Mr. Erb had full knowledge of the oral agreement for a reduction of rentals and hence the statutory bar is not applicable.

As bearing upon the admissibility of oral testimony, it should be noted that this litigation arises out of a contract that had been fully performed. For this reason the instant case is to be distinguished from *Claerhout* v. *Tromley,* 282 Mich. 649.

We are satisfied from the record that an oral agreement was entered into by plaintiff company,

acting through its representatives, whereby the rental for the unexpired portion of the term was reduced to $250 per month; and since the modified lease contract was completely executed by the respective parties, this oral modification was legally binding upon them. In arriving at this conclusion we are mindful that the modification was one of a written lease for a period of years by an oral agreement.* That such an oral agreement, after it has been fully executed by the respective parties, is binding is supported by abundant authority. *Eisenberg* v. *C. F. Battenfeld Oil Co.,* 251 Mich. 654, in which we quoted with approval the following:

" 'An oral agreement between landlord and tenant reducing the rent payable by the terms of a lease in writing under seal, while invalid and void so long as it remains executory, is valid and binding when followed by the regular payment and acceptance of the reduced amount in full. *Snow* v. *Griesheimer,* 220 Ill. 106 (77 N. E. 110).' L. R. A. 1915B, 66, note."

To the same effect, see *McKenzie* v. *Harrison,* 120 N. Y. 260 (24 N. E. 458, 8 L. R. A. 257, 17 Am. St. Rep. 638); *City Mortgage Co.* v. *Diller,* 180 Wash. 499 (40 Pac. [2d] 164); *C. S. Brackett Co.* v. *Lofgren,* 140 Minn. 52 (167 N. W. 274, L. R. A. 1918F, 998).

The judgment entered in the circuit court is reversed without a new trial. Defendant will have costs of both courts.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.

---

* See 3 Comp. Laws 1929, § 13411.—REPORTER.